**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| |
|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>    v.<br><br>GISEL DE LA CRUZ,<br>    *Defendant*. |

No. 3:17-cr-150 (VAB)

**ORDER AND RULING ON MOTION FOR COMPASSIONATE RELEASE**

Gisel De La Cruz ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 591 (Sept. 23, 2020) ("Def.'s Mot."); Mem. in Support of Mot. for Immediate Release, ECF No. 592 (Sept. 23, 2020) ("Def.'s Mem.").

The United States (the "Government") opposes her motion. Gov't Mem. in Opp'n to Def.'s Mot. for Compassionate Release, ECF No. 602 (October 8, 2020) ("Gov't Opp'n").

For the reasons set forth below, Ms. De La Cruz's motion for compassionate release is **GRANTED**.

Her term of imprisonment is reduced to **TIME SERVED**, followed by a period of four (4) years of supervised release, to be served in home incarceration until her release date of **August 9, 2021**. Ms. De La Cruz shall be released from Bureau of Prisons custody immediately in accordance with the terms of this Order.

I.    **BACKGROUND**

On July 12, 2017, a grand jury returned a multi-count indictment against Ms. De La Cruz and thirteen co-conspirators. Indictment, ECF No. 15 (July 12, 2017). The indictment charged Ms.

1

De La Cruz with one count for conspiracy to distribute and to possess with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(A)(vi), and 846, Count One, *id.* ¶¶ 1-6; a second count for possession with intent to distribute and the distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2, Count Four, *id.* ¶ 9; and a third count for encouraging and inducing illegal entry and residence in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), Count Thirty-Three, *id.* ¶ 38.

On May 23, 2018, Ms. De La Cruz pled guilty to the lesser included offense of Count One, conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 846, and to Count Thirty-Three, charging her with encouraging and inducing an alien to illegally come to, enter and reside in the United States in violation of 8 U.S.C.§ 1324(a)(1)(A)(iv). *See* Plea Agreement, ECF No. 216 at 1 (May 23, 2018).

On September 13, 2018, the Court sentenced Ms. De La Cruz to a term of 66 months on Count One and six months on Count Thirty-Three, to be served consecutively, for a total of 72 months imprisonment, as well as a four-year term of supervised release on Count One and a three-year term of supervised release on Count Thirty-Three, to be served concurrently, for a total of four years of supervised release. Minute Entry, ECF No. 307 (Sept. 13, 2018); J., ECF No. 308 (Oct. 4, 2018). At sentencing, following the Government's motion, the Court dismissed any remaining counts against Ms. De La Cruz under the indictment. Min., ECF No. 307.

On November 25, 2019, Ms. De La Cruz moved to reduce her sentence under 18 U.S.C. § 3582. Mot. to Reduce Sentence, ECF No. 435 (Nov. 25, 2019). On February 12, 2020, the Court denied the motion. Order, ECF No. 486 (Feb. 12, 2020).

On September 23, 2020, Ms. De La Cruz again moved to reduce her sentence. Def.'s Mot., Def.'s Mem.

On October 1, 2020, Ms. De La Cruz filed a supplemental memorandum in support of her motion. Mem. in Support, ECF No. 601 (Oct. 1, 2020) ("Def.'s Suppl. Mem.").

On October 8, the Government opposed Ms. De La Cruz's motion. Gov't Opp'n.

On October 16, 2020, the Court held a hearing by videoconference. Minute Entry, ECF No. 610 (Oct. 16, 2020).

## II.    STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. 18 U.S.C. § 3582(c)(1)(A). In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). *Id.*

## III.   DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, -- F. 3d. --, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) ("[B]ecause [Mr.] Gonzales – and not the [BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 2020 WL 5739712, at *8) (internal citations omitted).

Ms. De La Cruz contends that "the worsening global [COVID-19] pandemic, combined with the other relevant circumstances" in her case, "present an extraordinary and compelling basis for a sentence reduction." Def.'s Mem. at 9. Specifically, she argues that "[t]he COVID-19 [p]andemic, coupled with [her] [o]besity and [h]igh [b]lood [p]ressure," warrants a reduction in her sentence to time served. *Id*. She argues that although COVID-19 rates at her facility, Alderson FPC, are low, these numbers will continue to grow and that Alderson has only tested approximately twenty-five percent of its inmate population.[1] *Id*. at 11-12.

With respect to the § 3553(a) factors, Ms. De La Cruz argues that she has productively spent her time while in prison, noting that during her incarceration, she has "remain[ed] discipline[-]free, participat[ed] in the detainee work program and successfully complet[ed] several

[1] As of October 18, 2020, Alderson had tested 145 inmates, with 5 inmates testing positive for COVID-19. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed Oct. 18, 2020).

4

programs and classes," including the Residential Drug Abuse Program ("RDAP") and other life-skills courses. *Id.* at 14. She also represents that she has been taking beauty-care classes, at which she has excelled, which "shows her dedication to her future." *Id.* at 15. She argues that upon release, she plans to live with her daughter and son-in-law, who will help her "transition back into life post-incarceration." *Id.*

The Government opposes Ms. De La Cruz's motion, focusing solely on the § 3553(a) factors. Gov't Opp'n at 7-14. The Government contends that "[Ms.] De La Cruz was a leader or central member" of a large, multi-defendant drug conspiracy that "distributed within Connecticut[] extraordinary amounts of heroin and fentanyl – both of which are incredibly addictive and destructive opioids that have destroyed the lives of far too many people in Connecticut and elsewhere." *Id.* at 10. Given this "extremely serious criminal conduct," the Government argues that "[t]he nature and circumstances of her offense and the need for her sentence to reflect the seriousness of her criminal activity, to promote respect for the law and to provide just punishment for her offense all support [Ms.] De La Cruz serving her full sentence." *Id.* at 10. The Government also argues that Ms. De La Cruz's "criminal history weighs against a sentence reduction," citing her multiple prior convictions. *Id.* at 11-12.

The Court will address each of the relevant factors in turn.

### 1.    Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. May 1, 2020) (defendant serving a 180-month term of imprisonment and incarcerated at a facility with no

reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, -- F.Supp. 3d --, No. 3:92-cr-0070, 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence."); *United States v. Zukerman*, -- F. Supp. 3d --, No. 16-cr-194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("Zukerman's age, combined with diabetes, hypertension, and obesity, satisfy" the requirement of an extraordinary and compelling reason to modify his sentence).

Ms. De La Cruz argues that "[m]edical records from the Bureau of Prisons ("BOP") reveal that [she] has two medical conditions which put her at risk for suffering serious illness or death should she contract COVID-19," including obesity and hypertension. Def.'s Mem. at 3-4 (citing Medical Records, ECF No. 594 (Sept. 23, 2020) (filed under seal)). Ms. De La Cruz notes that her body mass index ("BMI") is 32, which falls into the category of "obese" and puts her at an increased risk of severe illness from COVID-19 under Centers for Disease Control and Prevention recommendations.[2] *Id.* (citing Medical Records at 7). Ms. De La Cruz also argues that she "suffers

---

[2] Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19)*,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

from high blood pressure, which the CDC warns might increase the risk for severe illness from COVID-19," as "[a] review of [her] blood pressure readings over the last two years show that her blood pressure is consistently high, at times falling into the American Heart Association's definition of stage one hypertension and other times meeting the criteria for stage two hypertension." *Id.* at 4 (citing Medical Records at 63, 97). She argues that seven of her nine blood pressure readings in 2019, and three of four thus far in 2020, reflect high and at times hypertensive numbers. *Id.* at 5 (citing Medical Records at 2, 3, 34, 38).

The Government does not contest whether Ms. De La Cruz's health conditions, in the context of the COVID-19 pandemic, constitute extraordinary and compelling reasons for release.

Courts in this District, and other courts in this Circuit, have held that the same or similar underlying medical conditions, alone or separately, combined with the risk of coronavirus, constitute extraordinary and compelling reasons for release. *See United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020) (finding that a defendant with "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19," had demonstrated extraordinary and compelling reasons" for release (internal quotation marks omitted)); *United States v. Sedge*, No. 16-cr-537 (KAM), 2020 WL 2475071, at *3 (E.D.N.Y. May 13, 2020) ("Given that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease, defendant has demonstrated that  he is at a higher risk for suffering life threatening complications from COVID-19."); *United States v. Pena*, 459 F. Supp. 3d 544, No. 15-cr-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (defendant had hypertension and hyperlipidemia, and the district court recognized the heightened risk hypertension poses); *United States v. Scparta*, -- F. Supp. 3d --, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9

(S.D.N.Y. Apr. 20, 2020) (defendant suffered from "hypertension, sleep apnea, high blood pressure, and high cholesterol" and the court recognized that the CDC "has identified hypertension as a comorbidity that increase the likelihood of serious risk from COVID-19"); *United States v. Sawicz*, -- F. Supp. 3d --, No. 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding that "the COVID-19 pandemic, combined with [the defendant's] particular vulnerability to complications from COVID-19 . . . constitutes an 'extraordinary and compelling reason' for his release").

Moreover, Ms. De La Cruz has argued, and the Government does not dispute, that her obesity and high blood pressure put her at greater risk of suffering severe illness should she contract COVID-19. Def.'s Mem. She also argues, and the Government again does not dispute, that COVID-19 cases at Alderson FPC, *see* Def.'s Supp. Mem. at 1, and generally across West Virginia, where the facility is located, *see* Def.'s Mem. at 9, are increasing, and that Alderson has tested only a small portion of its inmates, *id.* at 12.

Accordingly, the Court finds that extraordinary and compelling reasons exist to warrant Ms. De La Cruz's release.

### 2. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

Ms. De La Cruz notes that on August 17, 2020, she sent a formal request to the Warden at Alderson "asking for either (a) compassionate release, (b) an emergency furlough, or (c) home

confinement," and that request was denied. Def.'s Mem. at 7. She argues that since 30 days have lapsed from the time of her request, she has satisfied the exhaustion requirement. *Id.*

The Government does not discuss in its memorandum in opposition whether Ms. De La Cruz has exhausted her administrative remedies.

This Court therefore "need not decide in this case whether [Ms. De La Cruz has exhausted his administrative remedies, or whether [s]he is excused from doing so, because the Government has forfeited the issue." *United States v. Tyson*, No. 3:13-cr-002 (MPS), 2020 WL 3451694, at *2 (D. Conn. June 24, 2020).

Accordingly, as the Government has not argued that Ms. De La Cruz failed to exhaust her administrative remedies or that exhaustion is otherwise a barrier to relief, the Court continues on to the merits of her motion.

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]' . . . and only after considering the factors listed in 18 U.S.C. § 3553(a)," *McCarthy*, 2020 WL 1698732, at *5 (alterations in original).

Ms. De La Cruz contends that under the § 3553(a) factors, "the Court can conclude that the time that Ms. De La Cruz has already served is sufficient to satisfy the purposes of sentencing." Def.'s Mem. at 13. She argues that her time behind bars has "taught [her] a very valuable lesson, a lesson she will not need to learn twice," and that she "has spent the last three years preparing for her release and is ready to show the Court, her family, and herself that she will succeed." *Id.* at 14. Specifically, she notes that during the entirety of her time in prison, she "never received a

disciplinary ticket," and successfully completed the RDAP, as well as several other courses including "Weight Management," "Financial Recovery," "On the Right Track," and "Interview Skills." *Id.* (citing Certificates and Diplomas, ECF No. 592, Ex. I). She also argues that she has been taking and excelling at beauty care classes at the Stratford Career Institute during her incarceration, noting that her instructors have commented that her "superlative performance [in the classes] indicates [her] dedication to [her] studies and [her] aptitude for them." *Id.* at 15 (alterations in original) (citing Stratford Career Institute Beauty Care Module Exams, ECF No. 592, Ex. J). She also notes that though she has a criminal record, she had never spent time in prison before her current term of incarceration. *Id.* at 13.

Should she be released, Ms. De La Cruz notes that she "plans to live with her daughter and her son-in-law at their apartment in Hartford, Connecticut," along with her stepson, and that because her daughter is not currently working, "she will be able to stay home with [Ms. De La Cruz] and help her transition back into life post-incarceration." *Id.* at 15. She argues that given "her efforts at rehabilitation and her strong family support," as well as her age of 46 years old, she "presents an unlikely risk of recidivism." *Id.* at 15-16.

The Government argues that the § 3553(a) factors weigh against a sentence reduction because the nature and circumstances of Ms. De La Cruz's offense strongly support her serving her full federal sentence. Gov't Opp'n at 7. The Government notes that as part of the underlying offense conduct, Ms. De La Cruz paid $20,000 to "smuggle her boyfriend . . . into the United States," *id.* at 7–8; "supplied wholesale quantities of narcotics to, and collected narcotics proceeds from" members of the conspiracy, *id.* at 8; "discussed the collection of . . . tens of thousands of dollars in drug debts" from members of the conspiracy and "discussed the payment of tens of thousands of dollars in narcotics proceeds to their sources of supply," *id.* at 9; and "was a leader

10

or central member of the [conspiracy], which was importing . . . and distributing . . . extraordinary amounts of heroin and fentanyl," a conspiracy she took part in "over a lengthy period of time – despite the fact that [she] . . . w[as] on probation as a result of prior criminal convictions," *id.* at 10.

The Government also notes Ms. De La Cruz's criminal history, a history dating back to 2004, *id.* at 11, and argues further that "there is considerable evidence of [her] lengthy involvement in large-scale heroin trafficking for over a decade," *id.* at 12 n.1. Finally, the Government argues that the Court has already imposed a below-Guidelines sentence and that Ms. De La Cruz must serve her full term "to avoid unwarranted sentence disparities among similarly situated defendants." *Id.* at 13.

On balance, the Court agrees with Ms. De La Cruz.

"Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, the individual's danger to the community may ultimately outweigh any health concerns and the balance of factors would weigh against release." *United States v. Belle*, No. 3:18-cr-117-(VAB)-1, 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (collecting cases). Ms. De La Cruz's current term of incarceration stems in part from the fact that she "was a significant member of a drug trafficking organization ("DTO") that was distributing large amounts of heroin and fentanyl," and "supplied narcotics to, and collected narcotics proceeds from, members of this DTO." Plea Agreement at 11.

The Court also acknowledges that "the instant offense marks [Ms. De La Cruz's third felony conviction]" and that "[t]he offenses of conviction are very serious," particularly as "[Ms. De La Cruz]'s actions in this offense assisted in the trafficking of large quantities of heroin, a drug which has had devastating effects on communities in the United States," and she "committed these

actions after encouraging a previously convicted illegal immigrant to come to the United States and reside with her." Presentence Report, ECF No. 273 ¶ 84 (Aug. 23, 2018). Indeed, "[t]he seriousness of [Ms. De La Cruz's] offenses has not changed since [this Court] sentenced [her]" in 2018. *United States v. Colon*, No. 3:97-cr-48 (SRU), 2020 WL 6049215, at *6 (D. Conn. Oct. 12, 2020).

As "[t]he nature and circumstances of [Ms. De La Cruz]'s offense are undoubtedly serious," this factor "may weigh against granting compassionate release." *United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452, at *6 (E.D. Mich. June 9, 2020) (citing § 3553(a)(1)). But several of the remaining § 3553(a) factors weigh in favor of granting Ms. De La Cruz's motion.

"While [Ms. De La Cruz's crimes are very serious, h[er] clean disciplinary record in prison" and the fact that she has less than a year remaining of her sentence[3] weigh in favor of a reduction in sentence to time served. *United States v. Morales*, No. 3:12-cr-164 (JBA), 2020 WL 5369198, at *6 (D. Conn. Sept. 8, 2020) (granting compassionate release to a defendant who had served 97 months of a 135-month sentence). Ms. De La Cruz has done more than maintain a "clean disciplinary record"; she has participated in and, by all accounts, excelled at the programming available to her at her facility, which courts in this District have concluded weighs in favor of release. *See United States v. Bernard*, No. 3:97-cr-48 (RNC), 2020 WL 4462878, at *2 (D. Conn. Aug. 4, 2020) (granting compassionate release where the defendant had "demonstrated extraordinary rehabilitation through his participation in and leadership of" certain programming); *Pena*, 459 F. Supp. 3d 544, 2020 WL 2301199, at *5 (granting compassionate release where, "while in custody, [the defendant] completed drug and alcohol rehabilitation programming," "obtained mental-health treatment," "spent his time in prison productively, including by working

---

[3] Ms. De La Cruz is scheduled to be released on August 9, 2021. *See* Def.'s Mem. at 1, Gov't Opp'n at 2.

in food services," and "ha[d] not received a *single* disciplinary infraction while in custody" (emphasis in original)); *United States v. Vaughn*, No. 3:12-cr-00097-18 (KAD), 2020 WL 5501311, at *3 (D. Conn. Sept. 11, 2020) (granting compassionate release where "Defendant ha[d] availed himself of many rehabilitative programs designed to support a successful re-entry into the community as a law-abiding citizen" and "had a largely consistent behavioral record with the [BOP] and ha[d] taken substantial steps to improve his chances at a successful reintegration into the community"). This rehabilitative work, including the "educational and vocational training" described in § 3553(a), in the Court's view, should help Ms. De La Cruz transition to post-prison life and weighs in favor of release, especially when considered alongside the fact that she has had no disciplinary infractions while incarcerated.

While the Court acknowledges that Ms. De La Cruz's offenses were undoubtedly serious and warranted a significant term of incarceration, her "conduct since the crime" and "outstanding record while in custody" help to "convince the Court . . . that [s]he does not now pose a danger to the community" such that the goals of sentencing would be undermined by reducing Ms. De La Cruz's sentence to time served. *Pena*, 2020 WL 2301199, at *5. On balance, the Court finds that "the risk to [Ms. De La Cruz's] health and h[er] recent positive behavioral trend," as well as Ms. De La Cruz's significant participation in prison programming likely to ease her transition to life post-incarceration, "make h[er] case for a reduction in h[er] term of imprisonment extraordinary and compelling" despite any § 3553 factors that may weigh against release. *United States v. Johnson*, No. 3:18-cr-162 (MPS), 2020 WL 4449797, at *4 (D. Conn. Aug. 3, 2020).

Finally, the Court notes that Ms. De La Cruz has been incarcerated for two years and is set to be released on August 9, 2021. Def.'s Mem. at 1, Gov't Opp'n at 2. While the Court acknowledges that Ms. De La Cruz's sentence must "reflect the seriousness of the offense, . . .

promote respect for the law, and . . . provide just punishment for the offense," 18 U.S.C. § 3553(a),

Ms. De La Cruz has less than a year remaining in prison, which makes her release, during this

pandemic and the availability of home incarceration as a means to limit her interaction with the

public, "consistent with the [§ 3553(a)(1)] sentencing factors," *Morales*, 2020 WL 5369198, at *4

(citing *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 2393959, at *1 (D. Conn.

May 12, 2020) (granting compassionate release where a prisoner had only served fifty percent of

his sentence)). The Court therefore finds that "[t]he time [Ms. De La Cruz has served in prison has

already achieved much of the original sentence's retributive, deterrent, and incapacitative purpose"

such that release is warranted. *Pena*, 2020 WL 2301199, at *4.

Accordingly, having considered these factors and others set forth in 18 U.S.C. § 3553(a),

the Court concludes that the circumstances weigh in favor of immediate release.

IV.    **CONCLUSION**

For the reasons explained above, the motion for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A) is **GRANTED**. Ms. De La Cruz's term of imprisonment is reduced to **TIME**

**SERVED**.

It is **ORDERED** that Ms. De La Cruz be released immediately to begin her four-year term

of supervised release, to be served on home incarceration at the home of her daughter, Karina Pena,

monitored by technology deemed appropriate by the U.S. Probation Office, until her release date

on **August 9, 2021**. All other conditions of supervised release from her October 4, 2018 judgment

shall remain in effect.

Upon release, Ms. De La Cruz shall self-quarantine for fourteen (14) days as circumstances

allow. She must also contact her physician to determine whether she is a candidate for testing for

15

COVID-19. If her medical provider determines that she needs to be tested, she must comply with

that testing. If the test is positive, she shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of October, 2020.

      /s/ Victor A. Bolden
      Victor A. Bolden
      United States District Judge